# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

THOMAS J. SNIEG,

                    Plaintiff,

v.                                                         Case No. 25-CV-395-JPS

FRANK J. BISIGNANO,
Commissioner of Social Security,                           **ORDER**

                    Defendant.

## 1.    INTRODUCTION

Under 42 U.S.C. § 405(g), Plaintiff Thomas J. Snieg ("Plaintiff") seeks judicial review of the final agency decision of the Commissioner of the Social Security Administration ("Defendant"), which denied Plaintiff's application for Disability Insurance Benefits. Upon review of the entire record, and with the benefit of the parties' arguments, the Court will affirm Defendant's decision.

## 2.    BACKGROUND

### 2.1    Legal Framework for Evaluation of Social Security Disability Claims by the Social Security Administration

To be eligible for disability benefits under the Social Security Act, a claimant must be deemed "disabled" by the Social Security Administration ("SSA"). 42 U.S.C. § 423(a). In most cases, to determine whether a claimant is disabled within the meaning of the Act, an administrative law judge ("ALJ") gathers evidence, holds a hearing, takes testimony, and performs a five-step legal evaluation of the claim. 20 C.F.R. § 404.1520.

The ALJ must determine whether: (1) the claimant is engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable physical or mental impairment"; (3) the claimant's impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; (4) the impairment prevents the claimant from performing his past relevant work in light of his residual functional capacity ("RFC"); and (5) the claimant, considering his age, education, work experience, and RFC, can still perform another job that is available in the national economy. *Id.* at § 404.1520(a)(4)(i)–(v).

A claimant's RFC is an assessment of the most a claimant is able to do, notwithstanding his physical and mental limitations. *See Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520(e) and *Butera v. Apfel*, 173 F.3d 1049, 1054 (7th Cir. 1999)). According to Social Security Ruling ("SSR") 96-8p, RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities" in a work setting for eight hours per day, five days a week, or an equivalent work schedule. *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).[1] It entails "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

---

[1]The SSA publishes SSRs that "are binding on all components of the SSA. These rulings represent precedent[ial] final opinions and orders and statements of policy and interpretations that [the SSA has] adopted." 20 C.F.R. § 402.160(b)(1).

The claimant bears the burden of proof in the first four steps of the evaluation. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform given his impairments and RFC. *Id.* (citing *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)).

One additional aspect of the ALJ's decision-making process merits explanation, as it is relevant to this case.

> To determine the persuasiveness of a medical opinion, the ALJ considers the following factors: supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion.

*Cain v. Bisignano*, 148 F.4th 490, 496–97 (7th Cir. 2025) (citing 20 C.F.R. § 416.920c(c)(1)–(5)). Supportability and consistency are the most important of these factors. 20 C.F.R. § 416.920c(a). Indeed, the ALJ is obliged to explain how he or she considered these two factors but need not address the remaining factors. *Id.* at § 416.920c(b)(1)–(2).

In assessing supportability, "ALJs should give more weight to medical opinions with more internal explanation and support than to those without." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)). Supportability, put another way, is an inward-facing inquiry that considers the source's opinions in comparison to his or her own relevant medical records and explanation. The more internally supported an opinion is, the more persuasive it is. 20 C.F.R. § 416.920c(c)(1). Consistency, by contrast, involves the extent to which the medical opinion

is consistent with *other medical evidence* in the record. *Id.* at § 416.920c(c)(2). It is a more all-encompassing inquiry focused on how well a medical source is or is not supported by the entire record. The more consistent the opinion is, the more persuasive it is. *Id.*

### 2.2 Procedural History[2]

This case has a fairly lengthy procedural history. It began on October 11, 2018, when Plaintiff filed his application for benefits, alleging disability beginning June 24, 2018. ECF No. 10 at 1. His claim was initially denied on December 6, 2018, then again upon reconsideration on March 26, 2019. *Id.* ALJ William Shenkenberg held a hearing on July 25, 2019. *Id.* On August 28, 2019, ALJ Shenkenberg issued an unfavorable decision. *Id.* On October 22, 2019, the Appeals Council denied Plaintiff's request for review. *Id.*

Plaintiff then filed for judicial review, and the court remanded the case pursuant to a joint motion. *Id.* at 2. Following two additional hearings, on January 10, 2022, ALJ Shenkenberg issued another unfavorable decision. *Id.* On May 16, 2022, the Appeals Council remanded the case. *Id.* The Court notes that in April 2020, Plaintiff filed another claim for disability insurance benefits, which was ultimately consolidated with his original claim. ECF No. 12 at 3. That claim was therefore part of what was addressed by ALJ Shenkenberg in 2022 and subsequently remanded by the Appeals Council. *Id.*

On September 27, 2022, Plaintiff attended another hearing, this time with ALJ Brent Bedwell. ECF No. 10 at 2. On October 18, 2022, ALJ Bedwell also denied Plaintiff's claim. *Id.* Plaintiff again filed a complaint with this

---

[2]Citations to the underlying record found in the parties' briefs have been omitted for brevity and clarity.

Court, which again remanded the case pursuant to a joint motion on October 23, 2023. *Id.*

On November 6, 2024, Plaintiff attended his fifth hearing, with ALJ Bedwell again presiding. *Id.* On November 21, 2024, ALJ Bedwell again denied Plaintiff's claim. *Id.* The Appeals Council declined to assume jurisdiction. ECF No. 12 at 4.

In this most recent formal decision, ALJ Bedwell first found that Plaintiff was not engaged in substantial gainful activity (step one). ECF No. 9-16 at 7. The ALJ then found that Plaintiff suffered from the following "severe impairments" (step two): depression, anxiety, post-traumatic stress disorder ("PTSD"), and attention deficit hyperactivity disorder ("ADHD"). *Id.* However, when it came time to determine whether the combination of Plaintiff's impairments met the criteria to allow Plaintiff to be classified as "disabled" (step three), the ALJ determined that Plaintiff's impairments were not severe enough. *Id.* at 10.

The ALJ then moved to step four of the analysis: determining Plaintiff's RFC. *Id.* at 12. In this step of the analysis, the ALJ wrote,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and degree of limitation associated with these symptoms cannot reasonably be accepted as consistent with the medical evidence and other evidence in the record prior to the claimant's date last insured for the reasons explained in this decision.

*Id.* at 13. The ALJ focused on certain inconsistencies in the record between, on the one hand, the medical reports of Plaintiff's treating doctor and, on the other hand, the clear management of Plaintiff's symptoms with routine

and conservative treatment, Plaintiff's generally "appropriate appearance and interaction, intact memory and cognition, adequate attention/engagement, good judgment, and normal impulse control," and Plaintiff's wide range of activities throughout the relevant period. *Id.* at 18. Such inconsistencies led the ALJ to discredit certain medical records and statements made by Plaintiff. *Id.* at 18–22.

The ALJ decided that Plaintiff had the RFC to perform "a range of exertional work with accommodations for symptoms related to his mental impairments." *Id.* at 22. The ALJ determined that Plaintiff required a job with the following limitations: "the claimant can maintain attention, concentration, persistence and pace for simple job tasks with regularly scheduled breaks; can perform jobs having only occasional decision-making and changes in work setting; and can have occasional interaction with the public, coworkers and supervisors." *Id.* at 12. Finally, the ALJ concluded that Plaintiff could perform jobs such as a janitor, hospital cleaner, or warehouse worker (step five). *Id.* at 23.

On March 14, 2025, Plaintiff filed for judicial review. *See generally* ECF No. 1; 42 U.S.C. § 405(g).

**3. LEGAL STANDARD**

A district court has jurisdiction over a civil case challenging a final decision of the Commissioner. 42 U.S.C. § 405(g). The Social Security Act provides that a district court may affirm, modify, or reverse the decision of the Commissioner of Social Security and remand the cause for a rehearing. *Id.* However, the statute also states that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A reviewing court will uphold the Commissioner's decision so long as it is supported by substantial evidence and does not

contain legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citing 42 U.S.C. § 405(g)).

Substantial evidence is evidence that a reasonable person would accept as adequate to support the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citing *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002)). "A court determines whether the decision is supported by substantial evidence by reviewing the entire record, but it cannot substitute its judgment for that of the ALJ by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Benson v. Kijakazi*, No. 22-CV-550-JPS, 2023 WL 3126716, at *2 (E.D. Wis. Apr. 27, 2023) (citing *Jens*, 347 F.3d at 212). "Although this standard is generous, it is not entirely uncritical . . . ." *Steele*, 290 F.3d at 940 (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). A reviewing court must consider whether the ALJ articulated an "accurate and logical bridge from the evidence to his conclusion" that it can follow, *Clifford*, 227 F.3d at 872 (citations omitted), while bearing in mind that this "logical bridge" language does not replace or alter the substantial evidence standard. *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (citing *Biestek v. Berryhill*, 587 U.S. 97, 99–100 (2019)). Further, the Commissioner may not "cherry pick[]" from the medical records in reaching its decision. *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016) (collecting cases).

Ultimately, the reviewing court will "reverse only if the record 'compels' a contrary result." *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010) (quoting *Moab v. Gonzales*, 500 F.3d 656, 660 (7th Cir. 2007)). The reviewing court must "give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.

2000) (quoting *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999)). The Supreme Court has emphasized that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103.

In reviewing for supportability and consistency analyses in particular, the reviewing court should bear in mind that, as is true for ALJ opinions in general, the ALJ is subject "to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Put differently, the "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id.* (citing *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021)). Still, this standard requires the ALJ to "confront the evidence that does not support [his] conclusion and explain why it was rejected." *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). As noted in the Social Security Administration's revisions to the applicable regulations, "the articulation requirements in [the] final rules" are intended to "allow a . . . reviewing court to trace the path of an adjudicator's reasoning." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017).

### 4. ANALYSIS

Plaintiff advances two main arguments. First, he argues that the ALJ failed to adequately address the factor of supportability in evaluating the opinions of the state's medical experts, Dr. Catherine Bard ("Dr. Bard") and Dr. Frank Orosz ("Dr. Orosz"). ECF No. 10 at 14–18. Second, he argues that the ALJ failed to adequately address the factors of supportability and

consistency in evaluating the opinions of treating psychologist Dr. Patrick Martin ("Dr. Martin"). *Id.* at 18–24. The Court addresses each argument in turn.

### 4.1 Whether the ALJ Adequately Addressed Supportability in Evaluating the State's Medical Experts' Opinions

Here, Plaintiff claims that the ALJ failed to adequately address the factor of supportability in finding most persuasive the opinions of state agency consultants, Dr. Bard and Dr. Orosz. ECF No. 10 at 14. The Court disagrees.

In discussing the opinions of Drs. Orosz and Bard, the ALJ stated that he found persuasive their opinions regarding Plaintiff's ability to perform unskilled work with no more than mild to moderate limitations. ECF No. 9-16 at 19. The ALJ then gave his most express supportability reasoning: "These assessments, rendered in November 2018, March 2019, and June 2020, are well supported by the analysis of the evidence available at the time rendered, including consideration of subjective reports, treatment history, and mental status examinations." *Id.*

The Court begins by noting that its job is not to "nitpick 'in quest of a perfect opinion.'" *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). Instead, the Court's task is to "trace the path of an adjudicator's reasoning," Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5858, and determine whether that path of reasoning is supported by "substantial evidence." 42 U.S.C. § 405(g). That kind of path-tracing is distinctly possible here.

First, the Court understands what the ALJ means when he said that the state agency psychological experts' opinions were supported by

"consideration of subjective reports." In her 2019 opinion, Dr. Bard specifically noted that Plaintiff had self-reported that he was "able to complete his regular household chores and self-cares independently and regularly." ECF No. 9-4 at 20. She further noted Plaintiff's self-reported travel and activity, including a trip to New York with his son and a skiing trip in Montana. *Id*. She even acknowledged Plaintiff's self-reported struggles, including his "subjective reports of irritability," "financial worries causing some continued anxiety symptoms," and "difficulty related to grief." *Id*. In short, Dr. Bard provided a fulsome, balanced analysis of Plaintiff's subjective reports.

In his 2020 opinion, Dr. Orosz similarly dealt with matters of Plaintiff's subjective reports. First, he repeatedly addressed Plaintiff's subjective symptoms related to anxiety and depression. *See, e.g.*, ECF No. 9-10 at 40–41. However, he simultaneously noted Plaintiff's self-reported travel to California, upcoming trip to Hawaii, and ability to "go out alone, drive, [and] manage finances." *Id*. at 41. That is, Dr. Orosz similarly referenced Plaintiff's subjective reports in his opinions, and once more, the Court can trace what the ALJ meant when he said that Dr. Orosz's opinion is supported by "consideration of subjective reports."

Similarly, the Court understands what the ALJ meant when he said that the state agency psychological experts' opinions were supported by a consideration of treatment history. Dr. Orosz, in particular, discussed Plaintiff's regular engagement with psychiatry and therapy, as well as his treatment using "mirtazapine, trazodone, [and] hydroxyzine." ECF No. 9-10 at 41. Still, he described Plaintiff's conditions as "essentially stable, although chronic." *Id*. Dr. Orosz considered Plaintiff's treatment history once more in another analysis, noting that Plaintiff's "[m]ost recent tx or

therapy notes do not describe [Plaintiff]'s conditions as significantly worse." *Id.* at 34. In essence, Dr. Orosz also gave due consideration to Plaintiff's treatment history, in particular to the stability of it over time.

Finally, the Court understands what the ALJ meant when he said that the state agency psychological experts' opinions were supported by consideration of mental status examinations. Dr. Bard, in her 2019 opinion, described Plaintiff's mental status examinations in depth. These examinations depicted Plaintiff as alert and oriented with appropriate grooming, cooperative, maintaining good eye contact, demonstrating speech, thought process, and thought content within normal limits, lacking suicidal or homicidal ideation, and with memory and cognition intact. ECF No. 9-4 at 20. His mood was "noted as anxious at times" with "occasional psychomotor agitation," but his affect was nonetheless "congruent." *Id.* Dr. Orosz, in his 2020 opinion, considered the fact that Plaintiff's mental status examinations were within normal limits "aside from blunt affect." ECF No. 9-10 at 41.

Taken as a whole, "[a]lthough the ALJ did not provide record citations, these observations plainly relate to both [experts'] internal explanation[s] and the other medical evidence in the record." *Jennifer S. v. Bisignano*, No. 24-CV-1068, 2025 WL 2506126, at *5 (E.D. Wis. Sept. 2, 2025). Because an ALJ is subject to "only the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, as long as the Court is satisfied that it can trace the ALJ's reasoning and that reasoning is supported by "substantial evidence," the ALJ has satisfied this "low bar." *Jennifer S.*, 2025 WL 2506126, at *5. Here, the Court has been able to trace the ALJ's reasoning, and his reasoning is supported by substantial evidence.

Plaintiff raises an additional point in critique of the ALJ's decision that merits addressing. Specifically, Plaintiff critiques that the state agency consultant's opinions were completed without four years of updated records. ECF No. 10 at 16. But as Defendant rightly notes, ECF No. 12 at 19, "[a]n ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion." *Massaglia v. Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) (quoting *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). Here, Plaintiff does not allege any new diagnoses or need for additional or different treatment, nor does he allege any substantively new or worsening symptoms. *Cf. Stage*, 812 F.3d at 1125 ("Dr. Oni's evaluation contained significant, new, and potentially decisive findings—the need for a hip replacement and evidence of further spinal degeneration."); *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018) (finding that older opinion was not to be relied upon where claimant previously did not meet the criteria for depression and now did; further finding that the older opinion was not to be relied upon where claimant now displayed signs of aggression previously not seen).

Instead, nearly every piece of evidence Plaintiff cites was already in some form in the record that the state consultants considered. For instance, Plaintiff's head tremor, which worsened with stress, was known as early as 2018. ECF No. 9-4 at 18. Indeed, Dr. Bard noted Plaintiff's head tremor, even relating it to his anxiety, *id.* at 24, and Dr. Orosz reported this head tremor as well. ECF No. 9-10 at 38. Furthermore, Dr. Orosz was aware of Plaintiff's expressed memory, concentration, and persistence limitations. *Id*. He was also aware of Plaintiff's "shopping spree online." *Id.* at 41. Both doctors

were aware of Plaintiff's IBS symptoms, and Dr. Bard even specifically noted that such symptoms worsen with anxiety. ECF No. 9-4 at 20; ECF No. 9-10 at 41. In essence, there is very little new information in what Plaintiff cites, and what remains is relatively insignificant. It is Plaintiff's obligation to come forward with evidence that the "picture has changed." *See Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012) ("Particularly in counseled cases, the burden is on the claimant to introduce some objective evidence indicating that further development is required." (citations omitted)). Plaintiff has not done so, making the ALJ's continued reliance on Dr. Orosz and Dr. Bard's opinions appropriate. *See Bakke*, 62 F.4th at 1067 (7th Cir. 2023) ("[O]lder assessments can still constitute 'substantial evidence' supporting the ALJ's decision where the new tests do not 'necessarily undermine [previous medical] conclusions.'" (quoting *Pavlicek v. Sau*l, 994 F.3d 777, 784 (7th Cir. 2021))).

Overall, the ALJ adequately addressed the factor of supportability in finding most persuasive the opinions of state agency consultants, Dr. Bard and Dr. Orosz. His references to "subjective reports, treatment history, and mental status examinations" are well-understood by this reviewing Court, and Plaintiff's remaining critiques of his opinion fall flat.

### 4.2 Whether the ALJ Adequately Addressed Supportability and Consistency in Evaluating the Opinions of Dr. Martin

Plaintiff argues that the ALJ's discussion of Dr. Martin's 2021, 2022, and 2024 opinions analyzed supportability only superficially, failing to truly address Dr. Martin's explanations for his findings. ECF No. 10 at 18. Furthermore, Plaintiff argues that the ALJ's rejection of Dr. Martin's opinions failed to truly identify contradictions and instead simply did not

account for objective findings supporting Plaintiff's difficulties. *Id.* at 19. The Court disagrees.

In addressing Dr. Martin's June 2021, August 2022, and May 2024 opinions, the ALJ found that "Dr. Martin's assessment of marked and extreme limitations [in maintaining attention for two-hour periods and performing at a consistent pace] is not supported by his longitudinal treatment notes, nor it is consistent with the objective medical record." ECF No. 9-16 at 21. The ALJ further remarked that (a) there were no objective findings of deficits in concentration or attention on mental status examinations, (b) Plaintiff had not been treated for ADHD during the relevant period, and (c) Plaintiff had been engaging in several activities requiring a degree of attention and concentration. *Id.* Plaintiff contends that this does not constitute a meaningful supportability or consistency analysis.

Specifically, regarding point (a), Plaintiff contends that the ALJ did not consider Plaintiff's missing work and fidgeting, forgetting to adhere to home training recommendations, and cluttered home. ECF No. 10 at 20. However, the ALJ specifically noted that he did not find evidence of attention or concentration deficits on *mental status examinations*, not that he did not find evidence of it more generally. ECF No. 916 at 21. As a result, this point does not sway the Court. Moreover, the Court notes that the ALJ does seem to have been aware of many of these matters in other sections of the opinion—for instance, the ALJ was aware of Plaintiff's inability to keep up with the productivity requirements of his job, ECF No. 9-16 at 16, fidgeting, *id.* at 13, and cluttered home, *id.* at 16. The "ALJ need not address every piece or category of evidence identified by a claimant," *Warnell*, 97 F.4th at 1053 (citations omitted); the absence of reference to any given piece of evidence at a particular point in the opinion is not necessarily to be taken

as proof of fault by the ALJ. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) ("[N]othing in *Chenery* prohibits a reviewing court from reviewing an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision." (citing *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020))). Plaintiff's argument is belied by the fact that the ALJ indeed considered at other points in the opinion the same evidence that Plaintiff says he ignored.

Regarding point (b), Plaintiff notes that the fact that he had not been treated for ADHD during the relevant period would have been irrelevant to Dr. Martin's opinion, as Dr. Martin did not cite ADHD as a reason for his conclusions. ECF No. 10 at 19. Thus, it is not inconsistent with Dr. Martin's opinion to say that Plaintiff was not treated for ADHD. *Id.* This is correct, but not dispositive. The ALJ raised multiple other reasons for discounting Dr. Martin's conclusions, including the fact that there were "no objective findings of deficits in concentration or attention on mental status examinations." ECF No. 9-16 at 21. In the absence of any indication that the lack of ADHD treatment was *the* controlling reason for the ALJ discounting Dr. Martin's opinion, the Court cannot throw out the whole supportability inquiry on the basis of one uncompelling point of analysis.

Regarding point (c), Plaintiff contends that the ALJ failed to build a bridge between his observations that Plaintiff was able to do certain tasks and his conclusion that his observations are in contrast with the opinion of Dr. Martin, "who was often the one who documented these activities in the first place." ECF No. 10 at 20. This is incorrect. The ALJ noted that Plaintiff was able to play pool, manage home renovation projects, resolve a tax problem, and serve as the primary driver on a road trip. ECF No. 9-16 at 21. He stated that these are activities that require "a degree of attention and

concentration." *Id.* These observations "plainly relate" to Dr. Martin's internal explanation and the other medical evidence in the record. *Jennifer S.*, 2025 WL 2506126, at *5. The implication is that Dr. Martin's opinion does not itself adequately explain why these activities are possible, but gainful employment would not be. Moreover, these observations, when considered as informing of the state agency expert's opinions, serve as the basis for other medical evidence contradicting Dr. Martin's conclusions.

More broadly, Plaintiff argues that the ALJ only addressed supportability "in a vague and conclusory way that made no mention of the actual explanations that Dr. Martin provided for his conclusions." ECF No. 10 at 18. The Court disagrees. The level of analysis provided by the ALJ in this case is directly analogous to that provided by the ALJ in *Schreiber v. Colvin*, and in that case, the Seventh Circuit found the level of analysis plainly sufficient. 519 F. App'x 951, 958 (7th Cir. 2013). More specifically, in *Schreiber*, the Seventh Circuit noted that

> [t]he ALJ found that the notes, which indicated improvement in Schreiber's condition with medication and counseling, were inconsistent with the significant limitations in Dr. Belford's assessment. He also found her assessment inconsistent with the level of treatment she provided Schreiber—a fifteen-minute visit every two to three months. Additionally, the ALJ noted that Schreiber's own reported activities of daily living and the opinions of Dr. Taylor and Dr. Havens were inconsistent with Dr. Belford's assessment of Schreiber's limitations.

*Id.* The ALJ here reached the same conclusion for almost exactly the same reasons. He noted that there were "no objective findings of deficits in concentration or attention on mental status examinations," meaning Dr. Martin's own notes were inconsistent with his conclusions. ECF No. 9-16 at

21. He highlighted all of the activities that Plaintiff was able to do. *Id.* And he characterized Plaintiff's treatment as "routine and conservative." *Id.* at 18. In short, the ALJ gave precisely what the Seventh Circuit has said is sufficient.

Plaintiff further stresses that the ALJ did not "actually identify inconsistencies, but rather identifies positive observations that are untethered to the underlying basis for Dr. Martin's conclusions." ECF No. 10 at 24. But the ALJ here "did more than rely on 'hopeful remarks' in [Plaintiff]'s treatment notes to paint an overly-rosy view of [his] condition." *Schreiber*, 519 F. App'x. at 959 (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). Instead, the ALJ "consider[ed] all of the medical evidence" and concluded that Plaintiff's symptoms were not consistent with Dr. Martin's findings. *Id.*; *see also* ECF No. 9-16 at 20–21. For instance, the ALJ discounted Dr. Martin's conclusions because they were inconsistent with Plaintiff's "largely normal mental status examinations, response to treatment (medication, psychotherapy), and reported range of activities." *Id.* at 21. Further, the ALJ noted that Dr. Martin's conclusions of marked or extremely limited functioning along multiple axes were belied by Plaintiff's "ability to manage his medical care, attend appointments as scheduled, and handle stressful tasks (i.e., managing his home repairs and the associated contractors and workers, managing his taxes, serving as a school trip chaperone in a large city), without any decompensation in overall functioning." *Id.* These are not hopeful remarks, but concrete ways in which Plaintiff functions beyond what his capacities would be if Dr. Martin were correct. The ALJ has laid out the tension plainly.

Fundamentally, Plaintiff nitpicks the ALJ's findings, taking issue with matters like with the ALJ characterizing Plaintiff's handling of a tax

Case 2:25-cv-00395-JPS    Filed 12/18/25    Page 17 of 18    Document 14

issue as "efficient" when it took Plaintiff a month to resolve the issue. ECF No. 10 at 21. However, as noted previously, that level of nitpicking is not the Court's task here. *See Shramek*, 226 F.3d at 811 (noting that the Court should "give the opinion a commonsensical reading rather than nitpicking at it" (citation omitted)). The Court need not look for a "perfect" decision. *Schreiber*, 519 F. App'x at 962. At least with respect to the supportability and consistency analysis provided by the ALJ with respect to Dr. Martin's opinions, the Court is satisfied.

5. **CONCLUSION**

The Court has reviewed the record, the ALJ's decision, and the parties' arguments. The decision of the Commissioner of Social Security is affirmed.

Accordingly,

**IT IS ORDERED** that the decision of Defendant Commissioner of the Social Security Administration be and the same is hereby **AFFIRMED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of December, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Page 18 of 18